UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

GARY LABARBERA and FRANK FINKEL, Trustees
of Local 282 International Brotherhood of Teamsters
Welfare, Pension, Annuity, Job Training and Vacation
Sick Leave Trust Funds,

**REPORT AND RECOMMENDATION**

Plaintiffs,
07-CV-4697 (DLI) (JMA)

-against-

ALMAR PLUMBING & HEATING CORPORATION,

Defendant.

----------------------------------------------------------------X

A P P E A R A N C E S:

Avram H. Schreiber, Esq.
40 Exchange Place, Suite 1300
New York, NY 10005
*Attorney for Plaintiffs*

**AZRACK, United States Magistrate Judge:**

Plaintiffs Gary LaBarbera and Frank Finkel, as trustees of the Local 282 International Brotherhood of Teamsters ("Local 282" or "Union") Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds (the "Funds"), bring this action against defendant Almar Plumbing & Heating Corporation ("Almar" or "defendant") pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to recover delinquent contributions to employee benefit plans and other payments allegedly owed to the Local 282 Funds. Although Almar was properly served with copies of the summons and complaint on November 13, 2007 (Docket No. 3), it failed to appear in or otherwise defend

against the action, and plaintiffs moved for a default judgment on January 7, 2008. (Docket No. 4.) On January 8, 2008, the Clerk of the Court noted the default. (Docket No. 7.) By Order dated January 9, 2008, the Honorable Dora L. Irizarry entered default judgment against Almar and referred the matter to me for a Report and Recommendation ("R & R") on plaintiffs' application for damages, interest, injunctive relief, audit fees, attorneys' fees and costs.

During the intervening period between service of process on defendant and plaintiffs' motion for default judgment, on December 10, 2007, defendant remitted to plaintiffs all delinquent Fund contributions, as well as a portion of the interest accrued on those contributions and partial audit fees incurred. (Aff. of A. Schreiber in Supp. of Req. to Enter Default J. ¶¶ 17-20 ("Schreiber Aff."); see also Aff. of A. Schreiber in Supp. of Pls.' Claim for Damages ¶¶ 4-8 ("Schreiber Am. Aff.").)

For the reasons set forth below, I respectfully recommend that a judgment of $3,695.90 be entered against defendant. This award reflects $1,315.53 in interest and liquidated damages, $2,077.87 in attorneys' fees and costs, and $302.50 in audit fees. I further recommend that plaintiffs' request for injunctive relief be denied.

## I. BACKGROUND

Plaintiffs Gary LaBarbera and Frank Finkel bring this action in their capacity as fiduciaries of the Funds. (Compl. ¶ 3.) The Funds are jointly administered, multiemployer benefit trusts, within the meaning of ERISA, organized for the purpose of providing welfare, pension, annuity, job training, vacation and sick leave benefits to members of Local 282. (Compl. ¶¶ 2-4.)

Defendant Almar executed a Collective Bargaining Agreement ("CBA") with Local 282 on November 28, 2000 (Compl. ¶ 8; see also Schreiber Aff. ¶ 10 & Ex. B), and continues to be bound by the CBA through June 30, 2009 (Schreiber Aff. ¶¶ 9, 11).[1] Under the terms of the CBA, defendant is required to remit benefit contributions to the Funds according to rate schedules set forth in the CBA for work performed by Almar employees who are members of Local 282. (Compl. ¶ 8; Schreiber Aff. ¶ 14.)

Plaintiffs alleged in the complaint that defendant violated ERISA and the LMRA by failing to make required benefit contributions to the Funds for audit 7-0036 and audit 7-0037,[2] and for the November 2005 and February 2007 contribution periods, and claimed Almar owed $9,425.13 in unpaid contributions and "delinquency charges." (Compl. ¶¶ 9-10.) On December 10, 2007, prior to the filing of plaintiffs' motion for default judgment, defendant Almar remitted payment in the amount of $5,149.27 to plaintiffs. (Schreiber Aff. ¶¶ 17-20.) In an amended affirmation submitted at the Court's request,[3] plaintiffs indicated that defendant's payment was

---

[1] The CBA to which defendant Almar was a signatory covered the period July 1, 1999, to June 30, 2004. (Schreiber Aff. ¶ 9 & Ex. B.) Section 23(f) of the 1999-2004 CBA governs the administration of the Funds and states that employers are bound by the Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference. (Schreiber Aff. ¶ 12 & Ex. B.) Article IX, Section 1(a) of the Trust Agreement requires written notification that an employer will not sign a new CBA at least sixty days prior to the expiration of the current CBA. (Schreiber Aff. ¶ 13 & Ex. C.) As plaintiffs claim that they have not received any such written notification from defendant, defendant continues to be bound by the current CBA, which covers the period from July 1, 2004, through June 30, 2009. (Schreiber Aff. ¶¶ 9, 11, 13-14 & Ex. C, D.)

[2] On December 14, 2006, plaintiffs conducted audit 7-0036 and audit 7-0037, covering the period November 24, 2004, through October 31, 2006, for regular and fill-in employees employed by Almar. (Schreiber Aff. ¶¶ 17-18 & Ex. F, G.)

[3] Plaintiffs neglected to provide sufficient evidence of the actual amounts of unpaid contributions that were due and owing in their original affirmation in support of default judgment or provide any succinct tabulation of such amounts. As such, the Court was unable to

3

allocated to amounts outstanding as follows: (1) $4,135.90 to audit 7-0036, of which $3,170.14 was applied to unpaid principal, $822.50 to audit fees, and $143.26 to interest accrued through January 11, 2007 (Schreiber Am. Aff. ¶ 4 & Ex. A); (2) $614.81 to audit 7-0037, of which $198.32 was applied to unpaid principal and $416.49 to interest accrued through January 11, 2007 (Schreiber Am. Aff. ¶ 5 & Ex. B); (3) $49.42 for the November 2005 contribution period, which was applied to unpaid principal (Schreiber Am. Aff. ¶¶ 6-7 & Ex. C, D); and (4) $349.14 for the February 2007 contribution period, which was applied to unpaid principal (Schreiber Am. Aff. ¶ 8 & Ex. C, E). Defendant's payment did not, however, include the following: (1) for audits 7-0036 and 7-0037, interest accrued on the unpaid contributions from the calculated date of interest in the audits, January 12, 2007, through the date of payment, December 10, 2007; (2) for the November 2005 contribution period, interest accrued from December 30, 2005, the date payment was due, through December 10, 2007, the date of payment; (3) for the February 2007 contribution period, interest accrued from March 30, 2007, the date payment was due, through December 10, 2007, the date of payment; and (4) liquidated damages. (Schreiber Am. Aff. ¶¶ 4-8.)

Plaintiffs subsequently moved for default judgment on January 7, 2008, requesting that the Court enter judgment against defendant Almar in the amount of $8,322.79. (Docket No. 4.) The requested judgment consists of $532.95 in accrued interest for the audits, $62.05 in accrued interest for the November 2005 and February 2007 contribution periods, $721.82 in liquidated

---

calculate interest and liquidated damages amounts and ordered plaintiffs to provide the required information. Plaintiffs subsequently submitted a revised affirmation containing the necessary documentation.

damages, $6,703.47 in attorneys' fees and costs, and $302.50 in audit fees.[4]  (Schreiber Aff. ¶¶ 17-20, 24 & Pls.' Statement for J.)

## II. DISCUSSION

**A.     Liability**

Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citation omitted); Garden City Boxing Club, Inc. v. Batista, No. 05-CV-1044 (FB) (MDG), 2007 WL 4276836, at *2 (E.D.N.Y. Nov. 30, 2007) (citations omitted).  The allegations in plaintiffs' complaint establish the elements of liability required to state a claim under section 515 of ERISA, 29 U.S.C. § 1145 ("Section 515").  Section 515 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Plaintiffs allege that defendant entered into an agreement with Local 282 under which defendant was obligated to

---

[4] Plaintiffs submitted a revised request for attorneys' fees and costs, totaling $8,136.41, in conjunction with the amended affirmation filed on July 23, 2008.  (Schreiber Am. Aff. ¶¶ 9-10.)  As discussed in more detail infra, the Court finds it incredible that plaintiffs request an additional $1,432.94 to rectify their own errors and omissions in their original moving papers and will not consider the supplemental request for attorneys' fees and costs in determining a reasonable fee award pursuant to ERISA.  The Court also notes that although Plaintiffs' Statement for Judgment lists the $55.00 process fee and $350.00 filing fee separately and in addition to attorneys' fees, these charges were already included by plaintiffs in the attorneys' fee calculation.  (See Schreiber Aff. Ex. I & Pls.' Statement for J.)

5

make contributions to the ERISA Plans and that defendant failed to make such contributions in a timely manner. (Compl. ¶¶ 8-18; Schreiber Aff. ¶¶ 17-20.)

**B.      ERISA Relief**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted). Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citations omitted).

Plaintiffs submitted the following documents in support of their motion for default judgment and damages: (1) the affirmation of Avram H. Schreiber, Esq., counsel to plaintiffs; (2) the relevant portions of the 1999-2004 CBA between Local 282 and defendant; (3) the relevant portions of the Trust Agreement; (4) the relevant portions of the 2004-2009 CBA; (5) an amendment to the Trust Agreement indicating a modification of the interest rate on delinquent contributions effective October 2003; (6) audits 7-0036 and 7-0037; (7) notices of amounts underpaid for the November 2005 and February 2007 contribution periods; (8) documentation of attorneys' fees and costs; and (9) Attorney Schreiber's amended affirmation containing a tabulation of unpaid contributions, interest and liquidated damages due from defendant. I consider plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages.

6

ERISA allows plan fiduciaries to bring civil actions to enforce the provisions of the plan and obtain equitable relief. 29 U.S.C. § 1132(a)(3)(B)(ii); see also 29 U.S.C. § 1132(d)(1). Section 515 provides that a participating employer's contractual duty to make contributions to multiemployer plans is a statutory requirement. 29 U.S.C. § 1145. Violations of section 515 are enforceable through civil actions brought under 29 U.S.C. § 1132(g). See New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc., 382 F.3d 272, 278 (2d Cir. 2004).

Since plaintiffs have established liability under section 515 of ERISA, they are entitled to an award of the following: (1) interest on the unpaid contributions; (2) liquidated damages; (3) reasonable attorneys' fees and costs; and (4) such other legal and equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

1.      **Interest on Unpaid Contributions**

ERISA entitles plaintiffs to recover interest on unpaid contributions during the period of delinquency, calculated at the rate specified in the CBA or, if no such rate is specified, at the rate prescribed under Section 6621 of Title 26. See 29 U.S.C. § 1132(g)(2). The CBA establishes an interest rate of 18% per year for the time periods for which plaintiffs have requested damages.[5] (Schreiber Aff. ¶¶ 16-20 & Ex. E; Schreiber Am. Aff. ¶ 3.)

---

[5] Plaintiffs reference an amendment to the Trust Agreement, dated October 28, 2003, as support for their assertion that the CBA specifies an interest rate of 18% per year. (Schreiber Aff. ¶ 16 & Ex. E; Schreiber Am. Aff. ¶ 3.) The amendment provides that an employer is required to pay interest at the rate of 1 ½ % per month on delinquent contributions. (Schreiber Aff. Ex. E.) Assuming that this rate refers to simple and not compound interest, this amounts to 18% per annum. Plaintiffs assert that this rate is equivalent to 0.05% per day. (Schreiber Am. Aff. ¶¶ 4-8.) However, the Court's calculations indicate that the correct per diem interest rate is 0.049315% (18% divided by 365 days), not 0.05%.

Plaintiffs request interest on unpaid principal in the amount of $595.00, allocated as follows: (1) $500.03 for audit 7-0036, covering a period of 332 days from January 12, 2007, through December 10, 2007 (Schreiber Am. Aff. ¶ 4); (2) $32.92 for audit 7-0037, covering a period of 332 days from January 12, 2007, through December 10, 2007 (Schreiber Am. Aff. ¶ 5); (3) $17.54 for the November 2005 contribution period, covering a period of 710 days from December 30, 2005, through December 10, 2007 (Schreiber Am. Aff. ¶¶ 6-7); and (4) $44.51 for the February 2007 contribution period, covering a period of 255 days from March 30, 2007, through December 10, 2007 (Schreiber Am. Aff. ¶ 8).

Based on my review of plaintiffs' submissions in support of the instant motion and utilizing the revised per diem interest rate of 0.049315%, I recommend that the Court award plaintiffs interest in the amount of $593.71, allocated as follows: (1) $500.03 for audit 7-0036;[6] (2) $32.47 for audit 7-0037;[7] (3) $17.30 for the November 2005 contribution period;[8] and (4) $43.91 for the February 2007 contribution period.[9]

---

[6] $3,170.14 unpaid principal multiplied by a per diem interest rate of 0.049315% multiplied by 332 days is $519.03. The Court is unable to recreate plaintiffs' calculations leading to a lesser amount due of $500.03 for audit 7-0036 based on the data submitted. Nevertheless, the Court recommends an award of interest in the amount of $500.03, as that is the amount requested by plaintiffs.

[7] $198.32 unpaid principal multiplied by a per diem interest rate of 0.049315% multiplied by 332 days is $32.47. Plaintiffs appear to have arrived at their amount due of $32.92 by utilizing the inappropriately rounded-up per diem interest rate of 0.05%.

[8] $49.42 unpaid principal multiplied by a per diem interest rate of 0.049315% multiplied by 710 days is $17.30.

[9] $349.14 unpaid principal multiplied by a per diem interest rate of 0.049315% multiplied by 255 days is $43.91.

Accordingly, I respectfully recommend that the Court award plaintiffs total interest on unpaid contributions in the amount of $593.71.

**2.     Liquidated Damages**

ERISA provides that, in addition to interest on the delinquent contributions, plaintiffs will be awarded "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of [unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).  In the instant case, the CBA provides that liquidated damages shall be the greater of the interest on the unpaid contributions or twenty percent of the unpaid contributions.  (Schreiber Aff. ¶ 16 & Ex. C p. 31.)

Under the terms of the CBA, and in accordance with 29 U.S.C. § 1132(g)(2)(C), liquidated damages calculated at a rate of twenty percent of the unpaid contributions is the appropriate award.  As such, I recommend that the Court award plaintiffs liquidated damages in the amount of $721.82, allocated as follows:  (1) $602.45 for audit 7-0036 (Schreiber Am. Aff. ¶ 4);[10] (2) $39.66 for audit 7-0037 (Schreiber Am. Aff. ¶ 5); (3) $9.88 for the November 2005 contribution period (Schreiber Am. Aff. ¶ 7); and (4) $69.83 for the February 2007 contribution period (Schreiber Am. Aff. ¶ 8).

Accordingly, I respectfully recommend that the Court award plaintiffs $721.82 in liquidated damages.

---

[10] $3,170.14 unpaid principal multiplied by 20% is $634.03.  Once again, the Court is unable to recreate plaintiffs' calculations leading to a lesser amount due of $602.45, but, nevertheless, recommends a liquidated damages award in that amount, as that is the amount requested by plaintiffs.

9

3.     **Attorneys' Fees and Costs**

In conjunction with an award for unpaid contributions, ERISA mandates an award for reasonable attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(D).

a.     **Fees**

"The determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge." Bourgal v. Lakewood Haulage Inc., 827 F.Supp. 126, 129 (E.D.N.Y. 1993) (citations omitted); see also Corbett v. Reliance Moving & Storage, Inc., No. 00-CV-07656 (ENV) (KAM), 2007 U.S. Dist. LEXIS 96747, at *7 (E.D.N.Y. May 30, 2007) ("District courts are vested with the discretion to award 'a reasonable attorney's fee' in ERISA actions brought by fiduciaries to enforce the terms of a CBA.") (citation omitted). A party seeking such an award must support its application by submitting contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

The Second Circuit utilizes the "presumptively reasonable fee" to determine appropriate attorneys' fees for federal claims. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the district court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Id. at 184, 190.

The Court has considerable discretion in making the "presumptively reasonable fee" determination, which is comprised of a reasonable hourly rate multiplied by a reasonable number

of expended hours.[11]  Id. at 186-90; see also Diaz v. Paragon Motors of Woodside, Inc., No. CV-03-6466 (CPS) (RML), 2007 WL 2903920, at *3 (Oct. 1, 2007).  The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged.  See generally, New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir. 1983).  The Second Circuit has held that, in determining whether an attorney expended a reasonable number of hours, a district court must "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case" and "[i]f the court determines that certain claimed hours are excessive, redundant,

---

[11] In making the "presumptively reasonable fee" determination, the Second Circuit suggests that the district court consider the following factors:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill, 522 F.3d at 184.  The Second Circuit also suggests that the district court "bear in mind all of the case-specific variables" and additionally consider the twelve factors delineated in Johnson v. Ga. Highway Express, 488 F.2d 714 (5th Cir. 1974).  Id. at 190.  The twelve Johnson factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

11

or otherwise unnecessary, the court should exclude those hours in its calculation[.]" Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (internal citations and quotation marks omitted). Hourly rates, likewise, are reasonable when they conform to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

As a preliminary matter, the Court notes that plaintiffs submitted a revised request for attorneys' fees and costs, totaling $8,136.41, in conjunction with the amended affirmation filed on July 23, 2008. (Schreiber Am. Aff. ¶¶ 9-10.) As previously discussed, and for the reasons that follow, the Court will not consider the supplemental request for attorneys' fees and costs in determining a *reasonable* fee award pursuant to ERISA.

Plaintiffs' original moving papers were not only carelessly drafted, as evidenced by the numerous errors throughout, but they also contained significant omissions, requiring the Court to issue an order for additional documentation necessary for the computation of damages.[12] The amended affirmation, likewise, contained obvious mathematical errors, necessitating a considerable expenditure of the Court's time to rectify the numerical discrepancies. The Court also finds it highly unlikely that the drafting of the amended affirmation required an additional 7.3 hours of attorney time, given the boilerplate language and format of the amended affirmation, and the fact that the only 'new' information contained therein consisted of the outstanding principal figures, which should have been readily apparent from the file and included in the original moving papers.

---

[12] On July 17, 2008, the Court ordered plaintiffs to provide evidence of the total amounts of unpaid contributions relied upon in computing interest and liquidated damages due and owed for audit 7-0036, audit 7-0037 and the November 2005 and February 2007 contribution periods.

Applying Arbor Hill, I find it doubtful that a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay twice for the same task. As such, I will not consider plaintiffs' request for an additional $1,432.94 to remedy their own errors and omissions.

i. **Hourly Rates**

Plaintiffs' counsel, Avram Schreiber, Esq. submitted an affidavit and contemporaneous time records in support of plaintiffs' application for attorneys' fees and costs. Counsel sets forth a description of his firm's billing rates as follows: partner Avram Schreiber ("Schreiber") bills certain tasks at $300 per hour and the remainder at $80 per hour, associate Christina Cruz ("Cruz") bills certain tasks at $225 per hour and the remainder at $80 per hour, and paralegal Denise Dees ("Dees") bills at a rate of $80 per hour. (Schreiber Aff. ¶ 22 & Ex. I.) Plaintiffs have not provided explanations for the variations in an individual attorney's hourly rates; however, the Court infers from the itemized billing records that the discounted billing rates represent routine, administrative tasks which require less legal experience and skill.

Applying the Arbor Hill standard, I find these rates unreasonable. My review of the submitted time records indicates that Schreiber appears to bill more legally substantive tasks, such as reviewing audits and underpayment history, at $300 per hour and clerical tasks, such as filing the complaint and civil cover sheet and obtaining the names of judges, at $80 per hour. (See Schreiber Aff. Ex. I.) In LaBarbera v. J & A Concrete Corp., No. 07-CV-1731 (DLI) (JO), 2008 WL 918244 (E.D.N.Y. Apr. 1, 2008), a recent case in which the instant plaintiffs were also represented by the Law Offices of Avram Schreiber, the Honorable Dora L. Irizarry awarded an hourly rate of $275 to Schreiber in a similar ERISA default judgment case. Id. at *3. Given counsel's experience and ERISA expertise, and this Court's precedent, I find an hourly rate of

13

$275 reasonable and in keeping with the prevailing rates for partners in this district. See, e.g., Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp., No. 07-CV-656 (FB) (KAM), 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (finding that the prevailing rates in this district have ranged from $200-$375 per hour for partners, $200-$250 per hour for senior associates, $100-$150 per hour for junior associates and $75 per hour for paralegals) (citations omitted); see also Cruz v. Henry Modell & Co., Inc., CV-05-1450 (AKT), 2008 U.S. Dist. LEXIS 25339, at *22-23 (E.D.N.Y. Mar. 31, 2008). I further recommend that Schreiber's clerical tasks be compensated at the requested hourly rate of $80, as a reasonable, paying client would likely negotiate a reduced rate given the administrative nature of the tasks performed.

Attorney Cruz bills certain tasks at $225 per hour and the remainder at $80 per hour, and paralegal Dees bills at an hourly rate of $80. (Schreiber Aff. ¶ 22 & Ex. I.) In J & A Concrete Corp., Judge Irizarry adopted Magistrate Judge Orenstein's recommendation awarding Cruz an hourly rate of $125 for all tasks and Dees an hourly rate of $70. LaBarbera v. J & A Concrete Corp., No. 07-CV-1731 (DLI) (JO), 2008 WL 918244, at *3 (E.D.N.Y. Apr. 1, 2008); see also LaBarbera v. J & A Concrete Corp., No. 07-CV-1731 (DLI) (JO), 2008 WL 918259, at *10 (E.D.N.Y. Feb. 22, 2008) (Magistrate Judge Orenstein's R & R). Judge Orenstein noted Cruz's relatively recent admission to the Bar in 2005, characterizing her as a junior attorney, and recommended an hourly rate of $125 for all of her tasks, including those billed at the lower rate. LaBarbera v. J & A Concrete Corp., 2008 WL 918259, at *10. Judge Orenstein also recommended an hourly rate of $70 for Dees, as a reasonable and appropriate rate in keeping with the prevailing hourly rates for legal assistants in this district. Id. I find Judge Orenstein's reasoning and application of Arbor Hill persuasive and likewise recommend an hourly rate of $125 for Cruz and $70 for Dees. See also, Kochisarli v. Tenoso, No. 02-CV-4320 (DRH)

(MLO), 2008 U.S. Dist. LEXIS 33892, at *19 (E.D.N.Y. Apr. 24, 2008) (hourly rates for attorneys approved in recent E.D.N.Y. cases have ranged from $100-$150 for junior associates and $70-$80 for paralegals) (citation omitted).

ii. **Hours Expended**

Counsel avers that a total of 32.8 hours were spent on this case. (See Schreiber Aff. Ex. I.) After carefully scrutinizing counsel's time records, however, I find that this time expenditure was excessive and unreasonable. In making this determination, I considered a number of factors, including the fact that defendant is in default and this motion is undisputed, no novel, complex or particularly difficult issues of law were implicated, minimal legal research was required or performed, and the activities of the case, as reflected by entries on the docket sheet, were simple and few. Furthermore, many entries in the billing records indicate unnecessary duplication of effort and reveal significant time charges for routine and uncomplicated tasks.[13] Moreover, as discussed supra, plaintiffs' submissions, including the complaint and affirmation in support of the default judgment, are not only largely boilerplate, as evidenced by the numerous typographical errors throughout, but were also incomplete, requiring the Court to request additional documentation from plaintiffs. For example, paragraph 26 of the Schreiber Affirmation erroneously refers to defendant's "continued refusal . . . to report and pay the contributions and to allow an audit", further underscoring the boilerplate-nature of plaintiffs' submissions in the instant matter, as defendant has remitted the outstanding contributions and two audits were conducted. (Schreiber Aff. Ex. ¶ 26.)

---

[13] For example, Cruz billed 1.20 hours for reviewing the CBA in preparation for drafting the instant motion, at a cost of $270.00, and at least 14 hours for drafting the instant motion, at a cost of $3,150.00. (See Schreiber Aff. Ex. I.)

The Court was also forced to expend a significant amount of time in an attempt to rectify numerous inconsistencies in plaintiffs' submissions. Plaintiffs' Statement for Judgment, for example, lists the $55.00 process fee and $350.00 filing fee separately and in addition to attorneys' fees; however, these charges were already included by plaintiffs in the attorneys' fee calculation. (See Schreiber Aff. Ex. I & Pls.' Statement for J.) Also, as discussed supra, the unpaid contribution amount for audit 7-0036 does not correlate to the requested interest and liquidated damages amounts, and the per diem interest rate utilized by plaintiffs in all of their calculations is erroneously rounded up to 0.05%.

Even more significantly, the present litigation is one of many pending ERISA cases in this district brought by Schreiber on behalf of the instant plaintiffs. See, e.g., LaBarbera v. All Boro Trucking Company Inc., No. 08-CV-2830 (RJD) (VVP) (filed July 16, 2008); LaBarbera v. V.I.P. Contractors, Inc., No. 08-CV-2829 (ARR) (RML) (filed July 16, 2008); LaBarbera v. J & A Concrete Corp., No. 08-CV-2776 (DLI) (JO) (filed July 11, 2008); LaBarbera v. Graniteworks Inc., No. 08-CV-2774 (CBA) (KAM) (filed July 11, 2008); LaBarbera v. VLF11 Management Corp., No. 08-CV-2615 (ENV) (MDG) (filed July 1, 2008); LaBarbera v. Sukram and Sons Trucking, Ltd., No. 08-CV-2574 (DLI) (SMG) (filed June 27, 2008); LaBarbera v. Specialty Flooring Systems, Inc., No. 08-CV-2428 (CPS) (SMG) (filed June 18, 2008); LaBarbera v. United Fence and Guard Rail Corp., No. 08-CV-2026 (JG) (RML) (filed May 20, 2008); LaBarbera v. Ileana Trucking, L.L.C., No. 08-CV-2024 (ERK) (JMA) (filed May 20, 2008); LaBarbera v. Inter-City Mechanical Corp., No. 08-CV-1850 (DLI) (KAM) (filed May 7, 2008); LaBarbera v. Suffolk Granite Manufacturing Corp., No. 08-CV-1716 (SJ) (JMA) (filed Apr. 25, 2008). Counsel is obviously well-versed in ERISA law, particularly as applied to a CBA executed by the instant plaintiffs. Consequently, routine tasks such as reviewing the CBA or

drafting a relatively straightforward default judgment motion should not consume over fifteen hours of attorney time.  (See Schreiber Aff. Ex. I.)

In the interest of conserving judicial resources, the Court may exclude excessive and unreasonable hours from its fee computation by making an across-the-board percentage reduction in the total number of hours claimed, rather than reviewing each time-entry individually.  Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (citing In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237-38 (2d Cir. 1987)); see also Simmons v. N.Y. City Transit Auth., CV-02-1575 (CPS), 2008 U.S. Dist. LEXIS 16949, at *19 (E.D.N.Y. Mar. 4, 2008) ("The Court may exclude hours that are found to be excessive from the calculation of fees . . . or impose an across the board percentage cut.") (citations omitted).

For the reasons discussed above, I recommend a 60% reduction in the number of hours.  Specifically, I recommend reducing the hours as follows:  Schreiber's hours AHS_6 from 0.6 to 0.24; Schreiber's hours AHS_7 from 0.4 to 0.16, Cruz's hours from 29.6 to 11.84, and Dees' hours from 2.2 to 0.88.  Accordingly, I recommend an award of attorneys' fees of $1,620.40.[14]

**b.** **Costs**

ERISA allows for the recoupment of costs.  29 U.S.C. § 1132(g)(2)(D).  Plaintiffs have provided documentation that their costs total $457.47, including $350 in filing fees, $55 in

---

[14] 0.24 hours at Schreiber's revised AHS_6 rate of $275.00 is $66.00. 0.16 hours at Schreiber's AHS_7 rate of $80.00 is $12.80.  11.84 hours for Cruz billed at a revised hourly rate of $125.00 is $1,480.00.  0.88 hours for Dees' time billed at the revised hourly rate of $70 is $61.60.

17

service fees,[15] and $52.47 in miscellaneous costs. (See Schreiber Aff. Statement for J. & Ex. I.) I find these expenditures reasonable and recommend an award of $457.47 in costs.

**c.     Audit Fees**

Plaintiffs request $302.50 in audit fees for audit 7-0037. (Schreiber Aff. ¶¶ 18, 24.) ERISA provides for the recovery of costs, 29 U.S.C. § 1132(g)(2)(D), and the CBA entitles plaintiffs to recovery of audit fees. (Schreiber Aff. ¶ 16 & Ex. C.) Accordingly, I recommend an award of $302.50 in audit fees.

**4.     Injunctive Relief**

Finally, plaintiffs seek a permanent injunction enjoining the defendant "from any further or future violations of this or subsequent Collective Bargaining Agreements with Local 282". (Compl. ¶¶ 23-26; Schreiber Aff. ¶¶ 25-28.) A court may issue an injunction on a motion for default judgment provided the moving party shows that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." La Barbera v. Les Sub-Surface Plumbing, Inc., No. 06-CV-3343 (NG) (KAM), 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008) (citation omitted).

ERISA provides that fiduciaries may commence an action: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). Section 1132(g)(2)(E)

---

[15] The Statement for Judgment indicates a Process Service charge of $55.00, while the records submitted by counsel indicate a charge of $65.00. The Court will use the former charge in its calculation.

authorizes courts to grant "such other legal or equitable relief as the court deems appropriate" in an ERISA case.  29 U.S.C. § 1132(g)(2)(E).  Plaintiffs have thus demonstrated that they are statutorily entitled to injunctive relief.

Plaintiffs must also establish that they meet the prerequisites for an injunction, irreparable harm and the absence of an adequate remedy at law.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  In the complaint, plaintiffs allege that "[t]he failure of Defendant to promptly report and pay and to allow audits . . . will continue to cause irreparable damage to the Plaintiffs" because the "allocation of proper eligibility and credits to the members are actuarially determined and are based upon the prompt and accurate contributions from employers." (Compl. ¶¶ 24-25.)  Other than these allegations in the complaint and similar statements in the Schreiber Affirmation, plaintiffs' submissions do not offer any support for their request for injunctive relief.  Moreover, there is no evidence in the record to suggest that plaintiffs will be unable to collect a money judgment from defendants, as defendants have already remitted outstanding principal and partial interest and audit fees to plaintiffs, or that monetary damages are inadequate to remedy any future violations.

Plaintiffs have, therefore, failed to satisfy their burden of establishing irreparable harm or the absence of an adequate remedy at law.  See, e.g., La Barbera v. Les Sub-Surface Plumbing, Inc., 2008 WL 906695, at *10 (monetary damages adequate remedy for future ERISA violations); LaBarbera v. Interstate Development Group, No. 07-CV-2052 (ARR) (MDG), 2008 WL 858985, at *9 (E.D.N.Y. Mar. 31, 2008) (same).  Accordingly, I respectfully recommend that plaintiffs' request for injunctive relief be denied.

## III. CONCLUSION

For the foregoing reasons, I respectfully recommend that a judgment of $3,695.90 be entered against defendant. This award reflects $1,315.53 in interest and liquidated damages, $2,077.87 in attorneys' fees and costs, and $302.50 in auditor's fees. I further recommend that plaintiffs' request for injunctive relief be denied.

Plaintiffs are hereby ordered to serve a copy of this Report and Recommendation on defendant and to promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the date of entry of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

SO ORDERED.

Dated: July 31, 2008
      Brooklyn, New York

      / s /
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE